Argued and submitted December 21, affirmed February 22, 1982

SOLBERG et al,
*Petitioners,*

*v.*

CITY OF NEWBERG,
*Respondent.*

(No. 81-049, CA A22262)

641 P2d 44

Richard L. Sadler, Portland, argued the cause for petitioners. With him on the brief were David N. Goulder, and Keane, Harper, Pearlman and Copeland, Portland.

Richard D. Faus, City Attorney, Newberg, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

THORNTON, J., dissenting opinion.

## RICHARDSON, P. J.

Petitioners appeal from the Land Use Board of Appeals' (LUBA) affirmance of the City of Newberg's denial of petitioners' application for extension of a building permit. We affirm.

The building permit was issued in April, 1979, and authorized the construction of a 10-plex. Petitioners completed the excavation phase of the project·in June, 1979. They then encountered difficulties in procuring financing. While they attempted to secure financing, they substantially discontinued construction work. The evidence is conflicting as to whether *any* construction took place after June, 1979. Petitioners contend that some did, consisting of the placement of a protective fence around the excavation area and, later, the pumping of water from the area by the city in January, 1980. However, LUBA found that the evidence in the city proceedings did not support petitioners' contentions that work was performed after the spring of 1979.

In July, 1979, the city enacted a zoning ordinance which had the effect of limiting the residential density on petitioners' property to four units. However, the ordinance contains a saving clause which provides, as pertinent:

"To avoid undue hardship, nothing in this ordinance shall be deemed to require a change in plans, construction, or use of any building on which a building permit in accordance with the Newberg Building Code has been legally issued prior to the effective date or amendment of this ordinance, except that applications for extension of a building permit shall not be approved to exceed a period of one year from the date of adoption or amendment of this ordinance."

Section 303(d) of the city's building code provides:

"Expiration. Every permit issued by the building official under the provisions of this code shall expire by limitation and become null and void if the building or work authorized by such permit is not commenced within 180 days from the date of such permit, or if the building or work authorized by such permit is suspended or abandoned at any time after the work is commenced for a period of 180 days. Before such work can be recommenced, a new permit shall be first obtained so to do, and the fee therefor shall be

one-half the amount required for a new permit for such work, provided no changes have been made or will be made in the original plans and specifications for such work; and provided further that such suspension or abandonment has not exceeded one year.

"Any permittee holding an unexpired permit may apply for an extension of the time within which he may commence work under that permit when he is unable to commence work within the time required by this section for good and satisfactory reasons. The building official may extend the time for action by the permittee for a period not exceeding 180 days upon written request by the permittee showing that circumstances beyond the control of the permittee have prevented action from being taken. No permit shall be extended more than once. In order to renew action on a permit after expiration, the permittee shall pay a new full permit fee."

In the spring of 1980, petitioners obtained a loan commitment and then communicated with various city officials about the continuation of the 10-plex construction project. In June, 1980, petitioners formally applied to the city for an extension of their building permit; they contended generally that they were entitled to the extension by the terms of the saving clause in the zoning ordinance. The city denied the application. LUBA affirmed on the ground that petitioners' permit had lapsed pursuant to section 303(d) of the building code, because petitioners had discontinued construction work for a period exceeding 180 days. Consequently, there was no permit in effect to be extended.[1]

Petitioners' first assignment is that LUBA erred in ruling that they had lost "the benefit of the 'saving clause' because their building permit lapsed." Petitioners argue:

"First, the expiration language of the UBC [building code] is simply not relevant to the land use questions raised by this appeal. The limitation language of § 303(d) of the UBC serves a very limited and specific function in keeping with the overall purpose of the UBC, assuring that building permits are kept reasonably current so that construction is in conformance with the most recent UBC

---

[1] LUBA rejected the city's argument that the permit could not be extended pursuant to the saving clause because that provision required construction to be *completed* within one year after the adoption of the zoning ordinance.

requirements. As the City's own building inspector indicated, extensions of permits are routinely granted if the plans are in conformance with existing building codes. The only consequence of allowing a building permit to expire under § 303(d) is that one must pay an additional building permit fee to reinstate the permit. There is simply no notion of forfeiture under the UBC that would alert petitioners that their entire development would be lost if their permit expired.

"Second, the City of Newberg should not be permitted to use § 303(d) of the UBC as the basis for the land use planning decision because the relevant standards under the zoning ordinance and the UBC are markedly different. Newberg Zoning Ordinance § 572 applies an abandonment standard to determine if a nonconforming use may continue ('it is the intent of this ordinance to permit these nonconformities until they are removed or abandoned * * *'). The UBC, on the other hand, sets forth a 'suspension or abandonment' standard to determine if a building permit has expired. By allowing the City of Newberg to use the UBC standard to deny petitioners an extension of their permit, LUBA sanctioned the City's use of a less demanding standard than the zoning ordinance required. Under LUBA's interpretation, the City needed to find only that work had been suspended, not that petitioners had abandoned their project. The distinction is critical here, since petitioners never abandoned their development; petitioners' continual efforts to secure financing is conclusive evidence of that fact."

■ ■ The fundamental assumption—and flaw—in petitioners' argument is that the zoning ordinance's saving clause provides a standard for or right to extension of permits wholly independent of and more liberal than the building code's provision relating to duration and expiration of permits. As we understand the saving clause, it does quite the opposite: it adds a supplemental limitation to those in the building code on the city's authority to extend permits for construction of nonconforming buildings. In any event, both provisions relate to the expiration and extension of building permits. We conclude that they must be read together and that they operate together.

■ We also disagree with petitioners' understanding that section 303(d) of the building code imposes no condition on renewal or extension of permits other than the

payment of a fee. The section requires a permittee who holds an *unexpired* permit to apply for an extension of the time within which to commence work and to show that circumstances beyond the permittee's control "have prevented action from being taken." Where a permit has *expired,* work cannot be recommenced unless "a new permit shall be first obtained." Nothing in the language of the section suggests that the city's issuance of a new permit is any less discretionary than is issuance of an original permit.

■ Petitioners argue that, in practice, "extensions of permits are routinely granted if the plans are in conformance with existing building codes." They also argue that the city was estopped from denying the extension because of statements by the Planning Director to the effect that failure to undertake construction within the time limits prescribed by the building code would result only in further review by the Director's office and that an extension could be granted through the anniversary date of the zoning ordinance. We find nothing in the Director's statements which reasonably suggested that the continuity of petitioners' permit would be assured if the building code time limits were not met. Moreover, estoppel cannot arise from an action of a city official "who purports to waive the provisions of a mandatory ordinance or otherwise exceeds his authority." *Bankus v. City of Brookings,* 252 Or 257, 260, 449 P2d 646 (1969).

■ We therefore agree with LUBA that, if petitioners' permit expired pursuant to section 303(d) of the building code before they applied for an extension of the permit, the saving clause of the zoning ordinance does not aid them.

Petitioners' remaining assignments of error go to the question of whether their permit had expired.

■ They contend that LUBA erred by ruling that their efforts to secure financing for the project "did not constitute sufficient activity under [section] 303(d) * * * to prevent the lapse of their building permit."[2] While we recognize that people cannot erect buildings without

---

[2] One of the three LUBA referees dissented on that issue.

money, we do not interpret section 303(d) to include the procurement of money as part of "the building or work authorized by such permit." There are many *prerequisites* to the performance of work which do not *constitute* the performance of work, *e.g.*, having workers available, having fuel for motorized equipment, having sources of raw materials and having a manufacturer for tools. Wherever the line between "prerequisites" and "work" should be drawn, petitioners' argument that the procurement of financing falls on the "work" side of the line is not compelling. Petitioners' ongoing quest for financing did not prevent their work on the project from being suspended or abandoned within the meaning of section 303(d).

Petitioners' final argument is that LUBA erred in finding that "there is no comment in the [city] record which supports petitioners' statement as to any work done in January [, 1980,] to pump water out of the site." Petitioners contend that there was such evidence, that it was unrebutted and that the pumping took place less than 180 days before petitioners applied for the extension of their permit.

■      LUBA's order states that petitioners did not present evidence *at the city hearing* to substantiate their contention that work took place in January, although "the matter of whether construction had ceased was discussed" at the hearing. Petitioners state:

> "LUBA is absolutely wrong when it states that the record provides no support for 'petitioners' statement as to any work done in January to pump water out of the site.' In both their Application to Extend Building Permit and their Memorandum in Support of Amendment, petitioners set forth an itemized accounting of the expenditures they had incurred in developing their 10-plex in Newberg. Each document sets forth sums paid to the City of Newberg on January 28, 1980 for pumping water from the site. These documents provide clear evidentiary support for petitioners' claim that such work was performed on the site in January 1980. Even the City of Newberg conceded in its brief submitted to LUBA that such work was performed in January 1980. * * *"

Although LUBA's order refers to an absence of evidence, when read as a whole it adequately communicates that the city's finding that work had ceased for more than 180 days was supported by the record before the city. *See* Oregon

Laws 1979, ch 772, § 4(7). Petitioners' suggestion that the city or LUBA was required to accept "unrebutted evidence" of the kind described by petitioners is mistaken.[3]

Affirmed.

**THORNTON, J.,** dissenting.

There is a substantial threshhold question in this case, namely, whether LUBA has jurisdiction over the controversy. Contrary to the majority, in my view it does not. Oregon Laws 1979, chapter 772, section 3(1)(a) defines the "land use decisions" which LUBA has jurisdiction to review as including:

> "A final decision or determination made by a city, county or special district governing body that concerns the adoption, amendment or application of:
>
> "(A)  The state-wide planning goals;
>
> "(B)  A comprehensive plan provision; or
>
> "(C)  A zoning, subdivision or other ordinance that implements a comprehensive plan * * *."

The city's *action* here is analogous to the action by the city of Portland in *Fisher v. Colwell,* 51 Or App 301, 625 P2d 1333, *rev den* 291 Or 117 (1981), where we held that LUBA lacked jurisdiction under section 3(1)(a)(A) in the absence of any allegation that the city's action implicated the statewide planning goals. *See also Montmore Homeowners Assoc. v. Brydon,* 55 Or App 242, 637 P2d 931 (1981). Here, the city has adopted a comprehensive plan, and the zoning ordinance was adopted to implement the plan. Neither fact was true in *Fisher* or in *Montmore,* and, unlike those cases, jurisdiction arguably *could* exist here on the theory that the action involved the application of a zoning ordinance which implements a comprehensive plan. *See* Or Laws 1979, ch 772, § 3(1)(a)(C). However, the specific question the petitioners raise here does not involve the application of a zoning ordinance which implements a comprehensive plan. Petitioners do rely on a provision *contained* in such an ordinance, but that provision is more

---

[3] We do not consider whether the city's pumping water from the excavation pit at petitioners' expense, apparently as a sanitation measure, would constitute "work" and, therefore, "toll" the running of the 180-day period.

realistically viewed as an adjunct to a section of the building code than as an implementation of the city's comprehensive plan.

The Supreme Court has admonished this and other courts to determine jurisdictional questions on our own motion if the parties do not raise them. At the very least this court should call for briefs and argument by the parties on this question as well as consideration by the agency whose jurisdiction is involved and proceed to resolve this issue.

For the foregoing reasons I respectfully dissent.