No. 84-312

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

THE CITY OF KALISPELL,

Plaintiff and Respondent,

-vs-

DAROLD SCHAFFER, d/b/a
SCHAFFER & SONS,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Richard DeJana, Kalispell, Montana

For Respondent:

Glen Neier, City Attorney, Kalispell, Montana

---

Submitted on Briefs: May 3, 1985

Decided: June 7, 1985

Filed: JUN 7 1985

*Ethel M. Harrison*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court of the Eleventh Judicial District of the State of Montana, in and for the County of Flathead in which the defendant was found guilty of a "Violation of a Lawfully Issued Stop Work Order," a misdemeanor, as specified in section 5-4.2(d), Kalispell City Code.

On November 17, 1980, the appellant, Darold R. Schaffer, d/b/a Schaffer & Sons, was issued a building permit for the construction of a residence. The building inspector observed and logged the progress of the building for which the permit had been issued. On December 26, 1980, the inspector noted the foundation had been erected. Thereafter, the inspector observed the construction was suspended from December 26, 1980 up to and including November 18, 1981.

On October 14, 1982, Alan J. Petersen, a building official for the City of Kalispell, sent a letter to appellant informing him that the building permit had expired per section 303(d) of the Uniform Building Code, 1979, since no activity had been observed since January, 1981. Several days later, Petersen observed that construction had resumed on the property. On December 3, 1982, a "Stop Work Order" was delivered to appellant ordering him to cease construction until another permit was obtained. On December 7, 1982, appellant was observed working on the property. The building official filed a complaint in the City Court of Kalispell alleging a violation of a lawfully issued Stop Work Order.

The matter came to trial in city court on December 20, 1982, at which time appellant was found guilty, and judgment and sentence were rendered. On appeal to the District Court,

2

the parties filed a stipulation and order setting forth agreed facts, contentions, a briefing schedule, and waiver of jury trial.

On April 27, 1984, 10 months after the evidence and arguments were submitted to the court, appellant filed a motion to dismiss for lack of speedy trial. The motion was denied and on the same day the District Court affirmed the judgment and sentence previously entered against appellant by the city court.

The following issues are presented on appeal:

(1) Whether the District Court erred in finding that architectural design changes, work on financing related thereto, providing fill dirt, excavation, and snow removal failed to constitute work authorized by the building permit.

(2) Whether the District Court's delay from June 3, 1983 until April 27, 1984 in issuing an order violated appellant's right to a speedy trial.

The appellant maintains that the District Court erred by affirming the judgment of the city court which ruled that certain building activities did not constitute sufficient activity under section 303(d), Uniform Building Code.

The City's position is that the activities claimed to have been engaged in by appellant were not activities which required a building permit. After the permit was issued and the foundation constructed, the City submits, the building or work authorized by the permit was suspended for a period of at least 180 days beginning on September 31, [sic] 1981.

We find that all building activity within the City of Kalispell is governed by the Uniform Building Code (1979 Ed.) adopted by the municipality pursuant to Ordinance 939.

3

Section 303(d), Uniform Building Code, in pertinent part provides:

> "(d) Expiration. Every permit issued by the building official under the provisions of this Code shall expire by limitation and become null and void if the building or work authorized by such permit is not commenced within 180 days from the date of such permit, or if the building or work authorized by such permit is suspended or abandoned at any time after the work is commenced for a period of 180 days. Before such work can be recommenced, a new permit shall be first obtained so to do, and the fee, therefore, shall be one-half of the amount required for a new permit for such work, provided no changes have been made or will be made in the original plans and specifications for such work, and provided further that such suspension or abandonment has not exceeded one year . . . "

The City contends that appellant did not abandon but merely suspended construction for a period exceeding 180 days. The term "suspend" is not defined by the provisions to the Code. Section 401 of the Uniform Building Code (1979 Ed.) states:

> "Where terms are not defined, they shall have their ordinary accepted meanings within the context which they are used. Webster's Third New International Dictionary of the English Language, Unabridged, Copyright 1961, shall be considered as providing ordinary accepted meanings."

Accordingly, Webster's Unabridged Dictionary defines "suspend" as: "Temporarily debarred, inactive, inoperative; held in abeyance."

The substantial threshold question in this matter concerns the point in time the 180 day period commenced to run. The City inspector found no activity on the property from December 26, 1980 until November 18, 1981. However, both the amended complaint filed by the City charging the defendant with a violation of the Stop Work Order and the

4

findings of fact by the District Court state that the building or work authorized by said permit had been suspended after the commencement of work for 180 days, beginning on September 31, [sic] 1981 and ending April 29, 1982. Therefore, the period from September 31, [sic] 1981 through April 29, 1982 will be the time frame examined.

The appellant maintains the following activity precludes a finding of abandonded or suspended activity on the construction project:

(i) From September to October of 1981, appellant hauled multi-fill dirt on to the premises.

(ii) In January, 1982, snow was removed from the foundation to prevent buckling in an effort to preserve the building.

(iii) In June of 1981, and continuing through August of 1981, the State Department of Health was investigating the subdivision in which the property was located. The department found that the lot did not comply with the health requirements and was therefore threatening to withdraw the approval. It was not until February, 1982, that the developer made arrangements to resolve the sanitation problem. In an effort to comply with the department's specifications, appellant found it necessary to secure financing from Farmers Home Administration. Commencing in October, 1981 and continuing through January, 1982, the appellant revised architectural designs so as to qualify for the Farmers Home Administration Loan.

The City argues that the Uniform Building Code does not require a building permit for the design of the building. We disagree. Architectural plans are an integral part of a construction project. This is further illustrated by the fact

5

that when the project became subject to review by the Department of Health, design changes resulted. Design changes are a normal occurrence in the construction industry. Moreover, in order to qualify for financing, redesign of the project was necessary. Increasingly, due to the economic plight of the construction industry, builders will resort to redesign of architectural plans in order to secure low interest financing. Reasonableness dictates that active construction will cease while the architectural plans are being revised. Further, the International Conference of Building Officers publish a "Building Valuation Data" guide for determining the average cost of "most buildings" which is used to determine the building permit fee. The guide in pertinent part states:

> "The unit-costs are intended to comply with the definition of 'valuation' and section 423 of the Uniform Building Code and thus include: architectural, structural, and electrical, plumbing and mechanical work, except as specifically listed below. It also includes the contractor's profit which should not be omitted if he has a financial interest in the project." (Emphasis added.)

Although this guide is not adopted as an ordinance by the City, it clearly illustrates that the Code contemplates architectural design changes in the course of construction.

The City primarily relies on an Oregon Court of Appeals decision. Solberg v. City of Newburg (Or.App. 1982), 641 P.2d 44. In Solberg, the City of Newburg enacted a building code similar to section 303(d), Uniform Building Code. Appellants in their attempt to seek financing ceased construction activity in excess of 180 days. The Court of Appeals concluded that the mere procurement of money did not constitute work authorized by the permit. Solberg, supra,

641 P.2d at 48. We find the Solberg decision clearly distinguishable from the case at bar. In the present matter, appellant's efforts to secure financing for the project was not even alleged by appellant to constitute work activity within the purview of the building permit. Under these facts we hold that changes of design constitute sufficient activity under section 303(d) of the Uniform Building Code.

Similarly, we find the removal of snow from the foundation constituted work within the meaning of section 303(d) of the Uniform Building Code. The removal of snow was necessary to prevent the foundation from buckling. Appellant's practice was an effort to preserve the structure.

We find the final activity, the hauling of multi-fill dirt to the site, constituted work within the provision of section 303(d), Uniform Building Code. We find this work was necessary for the completion of the building.

The District Court by trial de novo affirmed the city court conviction. We find the District Court's ruling clearly erroneous. We hold that appellant did not suspend work on the building within the ordinary accepted meaning of the term suspended. The activities of appellant including architectural design changes, providing fill dirt, and shoveling and removal of snow from the foundation did constitute sufficient action under section 303(d), Uniform Building Code, to prevent the lapse of the building permit.

The remaining speedy trial issue will not be discussed because we find the judgment should be reversed on the grounds that the work conducted was in fact work within the contemplation of the building code. However, we find the District Court's failure to render a decision on the matter for 10 months unconscionable. The appellant filed a motion

to dismiss for lack of a speedy trial on April 27, 1984, nine months from the submission of the case to the District Court. The District Court rendered an ultimate ruling on the case, on the same day the appellant's motion to dismiss was denied. A ruling on both matters occurred after a ten-month delay alleged by the court to be due to an overcrowded docket. Such conduct violates this Court's sense of fair play.

The judgment of the District Court is reversed and the cause is dismissed.

_____
Justice

We concur:

_____
Chief Justice


_____


_____

_____
Justices

8

Mr. Justice L. C. Gulbrandson specially concurring.

I specially concur with the result expressed in the foregoing opinion and with the comments set forth therein so far as they relate to the merits of the case.

I do not concur with the comments set forth in said opinion regarding the timeliness of the trial judge's decision, as I deem those comments to be inappropriate.

_____
Justice

Mr. Chief Justice J. A. Turnage and Mr. Justice Fred J. Weber:

We join in the special concurrence of Mr. Justice Gulbrandson.

_____
Chief Justice

_____
Justice

9